UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

W.G.,

Petitioner,

-against-

MARKWAYNE MULLIN et al.,

Respondents.

26-cv-4955 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

W.G. is currently in immigration detention pending the completion of his removal proceedings. He was denied release on bond by an immigration judge ("IJ"), but he says that the allocation of burdens at that hearing violated his due process rights as guaranteed by the Fifth Amendment to the United States Constitution.

He filed this petition for habeas corpus relief, seeking a bond hearing where the Government would bear the burden of proving that he poses a danger to the community and is a flight risk by clear and convincing evidence, and where the IJ must consider his ability to pay bond as well as alternatives to detention. For the following reasons, the petition is DENIED.

## BACKGROUND

W.G. was admitted into the country in 2018 as a lawful permanent resident. Dkt. 7-2 at 2. Starting in 2023, he had several run-ins with the law. On September 30, 2023, W.G. was arrested in Orange County, New York, and charged with three counts of Menacing in the Second Degree, in violation of New York Penal Law ("NYPL") § 120.14(1); three counts of Criminal Possession of a Weapon in the Fourth Degree, in violation of NYPL § 265.01(2); Criminal Obstruction of Breathing or Blood Circulation, in violation of NYPL § 121.11(a); and Endangering the Welfare of a Child, in violation of NYPL § 260.10(1). Dkt. 12-7 at 16.

The criminal complaint on the weapon counts said that W.G. displayed a machete to three victims in a bedroom (his ex-girlfriend and her two children), that W.G. struck one victim in a struggle over the machete, and that he choked another. *Id.* at 5. The complaint on the child endangerment count noted that the two children were aged 10 and 14 and that he struck one of the children. *Id.* at 6. The complaint on the obstruction count reported that W.G. "use[d] his hand to apply pressure to the neck of the victim . . . and did cause the victim to not be able to breathe." *Id.* at 7. The complaint on the menacing counts stated that W.G. told the victims "I'm going to hurt you." *Id.* at 8. On July 10, 2024, W.G. pleaded guilty to the endangerment charge, and the remaining charges were dismissed. *Id.* at 16. He was placed on probation on October 16, 2024. His release turned out to be short lived. *Id.* at 17.

Four days into his period of probation, on October 20, 2024, W.G. was again arrested. This time, he was charged with Criminal Contempt in the First Degree, in violation of NYPL § 215.51; Assault in the Third Degree, in violation of NYPL § 120.00(1); Unlawful Imprisonment in the Second Degree, in violation of NYPL § 135.05; Endangering the Welfare of a Child, in violation of NYPL § 260.10; Criminal Mischief in the Fourth Degree, in violation of NYPL § 145.00(4); and Criminal Contempt in the Second Degree, in violation of NYPL § 215.50(3). *Id.* at 13. (The Government's submissions don't give all the details of these charges, but the IJ's order denying bond provides further color on W.G.'s conduct before his detention and describes this incident as one where W.G. "struck his ex-girlfriend . . . with a 'closed fist in her face,'" Dkt. 12-17 at 3–4.)

On December 4, 2024, W.G. pleaded guilty to the second-degree contempt charge, and he was sentenced to a six-month term of imprisonment. Dkt. 12-7 at 14. On that same date, he was resentenced to a six-month term of imprisonment on the child endangerment charge for violating the terms of his probation. *Id*. at 17.

On March 10, 2025, W.G. was arrested and charged with Criminal Contempt in the Second Degree, in violation of NYPL § 215.50(3). Dkt. 13 ¶ 10; Dkt. 12-1 at 9. He pleaded guilty on September 4, 2025, and was sentenced to a 364-day term of imprisonment and ordered to pay a $200 fine. Dkt. 12-1 at 9–10. (In the meantime, on June 25, 2025, he had been arrested again for Criminal Contempt in the Second Degree, although the disposition of this arrest is unknown. Dkt. 13 ¶¶ 11–12; Dkt. 12-1 at 10. It also appears that W.G. has two other arrests for Criminal Contempt in the First Degree, in violation of NYPL § 215.51(c), which post-date his detention, but as with several of his arrests, it isn't clear what the underlying conduct was. Dkt. 13 ¶¶ 34–35.)

On November 25, 2025, W.G. was arrested by United States Immigration and Customs Enforcement ("ICE") officials while he was at the Orange County Jail in Goshen, New York, and he was transferred to immigration custody. *Id.* ¶ 14. He was charged as removable based on his criminal conduct and denied release because ICE officials determined that he had failed to establish that he didn't pose a danger to the public. *Id.* ¶¶ 15–16. On December 26, 2025, he filed two applications for relief from removal. Dkt. 7-2 ¶ 12. His immigration case is currently on appeal to the Board of Immigration Appeals ("BIA"). Dkt. 13 ¶ 33.

In January 2026, W.G., represented by counsel, sought a bond hearing before the IJ. Dkt. 13 ¶¶ 25–28. Bail was denied on February 2, 2026, *id.* ¶ 30, and the IJ issued a written order a month later, Dkt. 12-17. The appeal of that bail determination is still pending. Dkt. 13 ¶ 32. In the IJ's order, the judge noted that under BIA precedent, W.G. was required to establish that he doesn't pose a danger to the community and is not a flight risk. Dkt. 12-17 at 2. Based on the conduct referenced above, the IJ concluded that "the record contains insufficient evidence to show that the facts and circumstances surrounding the respondent's arrests and convictions were insignificant, or adequate evidence of rehabilitation or other circumstances that would mitigate the seriousness of his actions." *Id*. at 4. The IJ accounted for the mitigating evidence submitted by W.G., including his "battles with post-traumatic stress disorder," his allegations of "verbal, physical, and sexual

abuse while in his romantic relationships in the U.S.," that as a result of these traumas he turned to alcohol, and that he "expresses remorse for his actions and that he is sober now." *Id*.

Nevertheless, the IJ concluded that this evidence was insufficient, and that "[t]he record clearly demonstrates, by the respondent's own admissions and through certified court documents, that the respondent has a propensity for violence toward women and children—a vulnerable subset of this society." *Id*. at 5. The IJ also observed that W.G. "ha[d] . . . demonstrated a flagrant disregard for the laws of this country; he violated orders of protection *multiple* times." *Id*. The IJ further pointed to "th[e] recency of these arrests and convictions, which only further highlights the respondent's ongoing danger." *Id*. The IJ acknowledged letters in the record from family and immigration support groups but observed that "family and community ties, while significant to flight risk, generally do not mitigate a noncitizen's dangerousness where the issue is whether the respondent is a danger to the community." *Id*.

This petition followed. W.G. contends that due process requires a renewed bond hearing where the Government bears the burden to justify his detention by clear and convincing evidence and where the IJ must consider W.G.'s ability to pay bond as well as alternatives to detention. The Government disagrees and argues that W.G. has received all the process he is due and is not entitled to anything more. For the following reasons, the Court finds that even if W.G. is right about what due process requires, he has not demonstrated that he was prejudiced such that he is entitled to a renewed bond hearing. Accordingly, the Court denies his petition for relief.

## LEGAL STANDARDS

To determine whether additional procedural protections are required for noncitizens in removal proceedings, courts employ the balancing test described in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020); *Black v. Decker*, 103 F.4th 133, 147–48 (2d Cir. 2024). Under that test, courts must consider three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Nevertheless, "[p]arties claiming denial of due process in immigration cases must, in order to prevail, 'allege some cognizable prejudice fairly attributable to the challenged process.'" *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) (quoting *Lattab v. Ashcroft*, 384 F.3d 8, 20 (1st Cir. 2004)).

## DISCUSSION

For the relief he seeks—a renewed bond hearing—W.G. must be able to point to *something* in the record suggesting that the shifting of burdens from him to the Government would make a difference in his case. *Id.* ("Our role is to provide relief to claimants who have suffered actual

harm." (citation modified)); *Lazaro Santos v. ICE Immigr. (DHS)*, 2026 WL 1725111, at *2 (S.D.N.Y. June 15, 2026). He can't make that showing here.

The IJ in this case considered all the evidence in the record, including the evidence of W.G.'s remorse, his trauma and resultant alcohol abuse, and his strong community ties. Dkt. 12-17 at 4–5. Nevertheless, the IJ observed that "[t]he record *clearly demonstrates*, by the respondent's *own admissions* and through certified court documents, that the respondent has a propensity for violence toward women and children—a vulnerable subsect of this society." *Id.* at 5 (emphases added). The IJ also observed that W.G. had "demonstrated a *flagrant* disregard for the laws of this country; he violated orders of protection *multiple* times" and that "the recency of [his] arrests and convictions . . . further highlight[]" the "ongoing danger" he presents. *Id*. (second emphasis added). There is nothing in the record before the Court, or in the IJ's decision, suggesting that the burden of proof had any impact on the IJ's denial of bond. *Cf. P.M. v. Joyce*, 2023 WL 2401458, at *5 (S.D.N.Y. Mar. 8, 2023) (finding prejudice where the IJ acknowledged that none of the petitioner's convictions was "of such nature that they should be characterized as 'particularly serious'")

This is the opposite of cases like *Velasco Lopez* and *Black*, where the Second Circuit focused on the clear lack of danger posed by the petitioners, which was critical to the court's due process analyses. *See Velasco Lopez*, 978 F.3d at 853 (noting that "Velasco Lopez was neither a flight risk nor a danger to the community but was unable to prove that was the case" and that while he was denied relief by the IJ when the burden of proof was on him, he was granted relief when the district court shifted the burden to the Government); *Black*, 103 F.4th at 153 (reviewing the evidence of petitioners' lack of danger, and finding that the lack of an initial bond hearing for Black under Section 1226(c) "led to an unwarranted detention," and that "G.M.'s circumstances similarly suggest a high likelihood that he was subject to an erroneous deprivation of liberty").

And to the extent that W.G. suggests that the IJ wrongly failed to consider alternatives to detention, like home confinement, the Second Circuit in *Black* made clear that such alternatives need not be considered where the issue is danger, as opposed to risk of flight. 103 F.4th at 159 ("[W]e stress that a showing of dangerousness by clear and convincing evidence would foreclose any possibility of bond. The IJ would then have no reason to consider financial circumstances or alternatives to detention.").

For these reasons, W.G. is not entitled to relief on his due process challenge here. Nevertheless, the Court observes that the Government appears to have no objection to W.G. seeking a renewed bond hearing based on changed circumstances—such as the impact that ongoing detention has had on him—or pressing his ongoing appeal of the IJ's denial of bond.

## CONCLUSION

For these reasons, the petition for habeas corpus relief is DENIED. The Clerk of Court is respectfully directed to enter judgment for respondents and close this case.

SO ORDERED.

Dated: August 31, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge